IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JIBREEL FRAZIER,                                    :
    Plaintiff,                                       :
                                                     :          CIVIL ACTION
    v.                                               :
                                                     :          NO. 23-3698
SYNOVUS FINANCIAL CORP, *et al.*,                   :
    Defendants.                                      :

**MEMORANDUM**

**SURRICK, J.**                                                      **SEPTEMBER 28, 2023**

Plaintiff Jibreel Frazier initiated this civil action by filing a *pro se* Complaint against

Synovus Financial Corp., d/b/a First Progress ("First Progress") and Equifax Consumer Services

("Equifax").[1]  He seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court

will grant Frazier leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.      FACTUAL ALLEGATIONS**

Frazier is a frequent litigant in this Court.  *See, e.g., Frazier v. TransUnion*, Civ. A. No.

23-3637 (E.D. Pa.); *Frazier v. Synovus Financial Corp.*, Civ. A. No. 23-3444 (E.D. Pa.); *Frazier*

*v. Connexus Credit Union*, Civ. A. No. 23-2083 (E.D. Pa.); *Frazier v. Experian Information*

*Solutions*, Civ. A. No. 23-1097 (E.D. Pa.); *Frazier v. Transunion*, Civ. A. No. 23-0627 (E.D.

Pa.); *Frazier v. Trans Union*, Civ. A. No. 22-2896 (E.D. Pa.); *Frazier v. Experian Information*

*Solutions*, Civ. A. No. 22-2887 (E.D. Pa.); *Frazier v. Experian PLC*, Civ. A. No. 22-1430 (E.D.

Pa.); *Frazier v. Capital One Auto Finance*, Civ. A. No. 21-5301 (E.D. Pa.); *Frazier v. Capital*

*One*, Civ. A. No. 21-4397 (E.D. Pa.).  In the present case, Frazier contends that "on or about July

---

[1] Frazier submitted a form complaint, along with an additional document titled "Complaint," as well as exhibits.  The Court will consider these documents together to constitute Frazier's Complaint.  (*See* ECF No. 2 at 2-21.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

20, 2023," in Philadelphia, Pennsylvania, First Progress and Equifax infringed upon his right to privacy by conspiring against him to share his nonpublic information.  (Compl. at 3.)[2]

Specifically, Frazier claims that on or about July 20, 2023, he sent First Progress a notice exercising his right to opt out of his nonpublic information being shared pursuant to the Gramm-Leach-Bliley Act.  (*Id.* at 3.)[3]  He contends that he sent a copy of this notice to Equifax, as well as another notice to Equifax that he no longer wished to share personal, nonpublic information and requested Equifax to cease sharing such information, "as in name, address, income, social security number, or other information."  (*Id.* at 3, 7.)  On or about September 20, 2023, Frazier received a notice from Equifax informing him that it had verified the account at issue.  (*Id.* at 7.) Frazier avers, however, that he "did not contend [sic] that this information belonged to him but did inform Equifax that he did not want his First Progress account being shared."  (*Id.*)  Frazier alleges that as of September 20, 2023, his Equifax consumer report continued to list the First Progress account, "(account number 544303xxxxxxxxx)."  (*Id.*)

Frazier alleges that his right to privacy has been violated because he "no longer wished to share his nonpublic information."  (*Id.* at 8.)  He further claims that Equifax has been informed of his desire that this information not be shared.  (*Id.*)  As alleged, "First Progress has caused [Frazier's] information to be publicized on Equifax['s] platform that provides public access to [Frazier's] nonpublic personal information therefore both Defendants have invaded and infringed

---

[2] Although he provides a Delaware post office box as his mailing address, Frazier represents that he is domiciled in the "this district."  (*See* Compl. at 1, 6.)  The Court construes this as a representation that Frazier is a citizen of Pennsylvania.

[3] Elsewhere in the Complaint, Frazier indicates that the letter was sent on or about July 28, 2023.  (*See* Compl. at 7.)

upon [Frazier's] right to privacy." (*Id.* at 9.)  He further alleges that both Defendants "have

conspired to invade and infringe upon" his right to privacy.  (*See id.* at 9-11.)

Frazier attached several exhibits to his Complaint.  Exhibit A consists of a July 27, 2023

letter from Frazier to First Progress referencing a "Member/Account #: Closed Account

544303XXXXXXXXXX" and informing First Progress that he no longer wished to have his

personal nonpublic information disclosed because he was "exercising his right to opt out of

nonpublic personal information being reported" pursuant to the Gramm-Leach-Bliley Act.  (*See*

*id.* at 14.)  The letter demands that First Progress "immediately stop disclosing/sharing my

nonpublic information for this particular closed account to TransUnion, Equifax, and Experian."

(*Id.*)  Equifax LLC is listed as one of the "CC" recipients on the letter.  (*Id.*)  Exhibit B is a July

26, 2023 letter addressed to Equifax, which refers to a First Progress account, although it does

not specifically identify the account by number.  (*See id.* at 16.)  Frazier indicated in the letter

that the "status and balance of this account is a private matter" that he did not want disclosed,

and that he invoked his right to privacy and the "protections provided by the Gramm Leach

Bliley Act." (*Id.*)  Frazier further demanded that "TransUnion [sic] remove this closed First

Progress account from [his] consumer report as [he] no longer wish[ed] to share [his] nonpublic

information." (*Id.*)  Exhibit C appears to be one page of a report prepared for Frazier indicating

that an investigation was conducted and account "*1837" with "First Equity Card Corp" was

verified as accurate, showing a past due balance amount of $161 as of August 4, 2023.  (*Id.* at

18.)  Exhibit D includes a portion of an Equifax credit report prepared for Frazier and generated

on September 1, 2023, that lists a "First Progress card," account number

544303XXXXXXXXXX, with an outstanding past due balance of $161 as of August 2023.

(*Id.* at 20.)

Frazier claims that he has suffered emotional distress, mental anguish, and harm to his reputation as a result of Defendants' actions. (*Id.* at 4, 11.) As relief, Frazier requests that the Court order First Progress and Equifax "to cease the sharing of" his information. (*Id.* at 4.) He also seeks damages. (*Id.* at 4, 11.)

## II. STANDARD OF REVIEW

Because Frazier appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of the *pro se* Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (internal quotation omitted). An unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (internal quotation omitted).

### III.    DISCUSSION

#### A.    Gramm-Leach-Bliley Act

Frazier alleges that First Progress and Equifax have violated his right to privacy in that

that he chose to "opt out," pursuant to the Gramm-Leach-Bliley Act, of having his personal

information shared, and that he notified each Defendant that he was "exercising" his right to do

so.  (*See* Compl. at 3, 7.)  To the extent Frazier cites the Gramm-Leach-Bliley Act, 15 U.S.C. §

6801 *et seq.*, as a basis for a claim, however, that Act does not support a private cause of action.

*See, e.g.*, *Miller v. Navy Fed. Credit Union*, No. 23-1910, 2023 WL 4629648, at *4 (E.D. Pa.

July 18, 2023) (dismissing claim based on Gramm-Leach-Bliley Act with prejudice because Act

does not provide a private right of action); *Ishmael v. GM Fin. Inc.*, No. 22-1095, 2022 WL

2073821, at *2 (E.D. Pa. June 9, 2022); *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F.

Supp. 3d 721, 726 (N.D. Ill. 2018); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*,  No. 10-5298,

2012 WL 1118194, at *5 (E.D.N.Y. Mar. 30, 2012).

#### B.    Fair Credit Reporting Act

The Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), was enacted "to

ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect

consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also*

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA

is intended "to protect consumers from the transmission of inaccurate information about them,

and to establish credit reporting practices that utilize accurate, relevant and current information

in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688,

706 (3d Cir. 2010))).  In the language of the FCRA, consumer reporting agencies "collect

consumer credit data from 'furnishers,' such as banks and other lenders, and organize that

material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).[4]

Consumer reporting agencies are required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  To state a claim under this section, a plaintiff must plead the following elements: (1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry.  *Cortez*, 617 F.3d at 708 (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

The FCRA also "confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007).  In that regard, if a consumer disputes the completeness or accuracy of information contained in his file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).  To establish that a consumer reporting agency is liable for failing to reinvestigate a dispute under the FCRA, the consumer must establish that the consumer reporting agency had a duty to do so, and that it would have discovered a discrepancy had it undertaken a

---

[4] The FCRA provides for civil liability for noncompliance due to willfulness and negligence.  *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); *id.* § 1681o (creating civil liability for negligent noncompliance with any portion of the Act).

reasonable investigation.  *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115

F.3d 220, 226 (3d Cir. 1997)).

Accordingly, to proceed under either § 1681e(b) or § 1681i(a), a plaintiff must show that

the reported information was in fact inaccurate.  *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342-43

(3d Cir. 2022); *see also Angino v. Trans Union LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("To

prevail under [a § 1681e(b) claim or a § 1681i(a) claim], the . . . [plaintiffs] must show that their

credit report contains inaccurate information."); *Holland v. Trans Union LLC*, 574 F. Supp. 3d

292, 297-98 (E.D. Pa. 2021).  "[I]nformation that is technically accurate but materially

misleading is sufficient to trigger § 1681i(a), just as it is for § 1681e(b)."  *Bibbs*, 43 F.4th at 345

(citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)).  Additionally, the

consumer reporting agency "may terminate a reinvestigation of information disputed by a

consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous

or irrelevant, including by reason of a failure by a consumer to provide sufficient information to

investigate the disputed information."  15 U.S.C. § 1681i(a)(3)(A).

To state a plausible claim under the FCRA against a furnisher of credit information, a

plaintiff must allege that he "filed a notice of dispute with a consumer reporting agency; the

consumer reporting agency notified the furnisher of information of the dispute; and the furnisher

of information failed to investigate and modify the inaccurate information."  *Harris v. Pa.*

*Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D.

Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am.*

*Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*); *see also* 15 U.S.C. § 1681s-2(b).  If

the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue

for noncompliance."  *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa.

2017).  "[U]nder the FCRA, '15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a

private citizen seeking to recover damages caused by a furnisher of information.'"  *Eades v.*

*Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (quoting *SimmsParris*, 652 F.3d at

358) (alteration omitted)).  Similar to claims under § 1681e or § 1681i, courts have explicitly

held that a showing of inaccuracy is essential to a § 1681s-2(b) claim in regard to furnishers of

credit information.  *Holland*, 574 F. Supp. 3d at 298 (citations and internal quotation marks

omitted).

Frazier contends that First Progress and Equifax have violated his rights because they

have publicized private information without his consent.  Putting aside whether the information

at issue is private and whether it has been publicized, the Court notes that Frazier misconstrues

his rights under federal and state law.  Specifically, Frazier seeks to have certain delinquent

account information excluded from his credit file and/or consumer report based on his purported

election to "opt out" of the inclusion of this information.  Although he did not expressly

reference the statute, the Court interprets Frazier's Complaint as raising claims under the FCRA

due to the nature of the allegations he presents.  The FCRA simply does not have a consumer

"opt out" provision.  Instead, "[t]he . . . FCRA . . .  was crafted to protect consumers from the

transmission of inaccurate information about them, and to establish credit reporting practices that

utilize accurate, relevant, and current information in a confidential and responsible manner."

*Cortez*, 617 F.3d at 706.  To meet these statutory goals, the FCRA protects consumers' privacy

rights by dictating how furnishers must report information to consumer reporting agencies, if

they do so.  *See* 15 U.S.C. § 1681s-2.  Caselaw makes it clear that the consumer information

furnished to consumer reporting agencies, and reported by consumer reporting agencies, must be

accurate.  Notably, Frazier does not contest the accuracy of the information at issue.  The FCRA

also limits, *inter alia*, under what circumstances consumer reporting agencies may furnish

consumer reports, including to whom the information may be furnished, and what information

may be contained in consumer reports. *See, e.g.,* 15 U.S.C. §§ 1681b, 1681c.  Under the FCRA,

a consumer's consent is required for a consumer reporting agency to furnish a consumer report

only in limited circumstances, none of which are implicated in the case at bar. *See, e.g.,* 15

U.S.C. § 1681b(a), (c); *see also George v. Transunion Corp.*, No. 22-4967, 2023 WL 5044956,

at *4 (E.D. Pa. Aug. 8, 2023).

### 1.    First Progress

The allegations in Frazier's Complaint focus on privacy concerns stemming from

information collected by a consumer reporting agency as furnished to it by a credit card issuer.

To the extent the Complaint can liberally be construed to allege that First Progress acted as a

"furnisher" under the FCRA, Frazier has not pled a plausible claim against First Progress.  *See*

15 U.S.C. § 1681s-2; *Donohue v. C. Blosenski Disposal Co.*, No. 05-5356, 2006 WL 3423888, at

*1 (E.D. Pa. Nov. 28, 2006) ("While the FCRA does not explicitly define 'furnisher of

information,' the Courts have defined the term to mean 'an entity which transmits information

concerning a particular debt owed by a consumer to a consumer reporting agency.'").

While Frazier alleges that First Progress disclosed information about his account to

Equifax, he does not allege that the information transmitted was inaccurate.  This is fatal to any

claim under § 1681s-2.  *See Holland*, 574 F. Supp. 3d at 302 (noting that there must be a

threshold showing of inaccuracy to make a claim against a furnisher); *see also Berkery v.

Verizon Commc'ns Inc.*, 658 F. App'x 172, 175 (3d Cir. 2016) (*per curiam*) (affirming dismissal

of FCRA claim against furnisher that was based on conclusory allegations); *Villalobos v. Citi

Bank NA*, No. 22-1837, 2023 WL 3035315, at *5 (M.D. Pa. Feb. 2, 2023) ("Plaintiff has

provided no information about what the negative credit information consisted of (aside from allegations that it was related to a BestBuy credit card), and has failed to explain in what respect the reported information was false."); *Gittens v. Sterling Jewelers Inc.*, No. 15-5872, 2016 WL 828098, at *2 (D.N.J. Feb. 29, 2016) ("The complaint does not say what the negative credit information consisted of, or in what respect it was false."). Accordingly, Frazier fails to allege a plausible FCRA claim for relief against First Progress.

> ### 2. Equifax

Liberally construing Frazier's Complaint, it is possible that Frazier seeks to present claims against Equifax pursuant to the FCRA. Such claims are best construed as alleging that Equifax failed to fulfill its responsibilities under § 1681e(b) and § 1681i(a) of the FCRA. Nevertheless, Frazier has not alleged a plausible claim. While he alleges that he notified Equifax that he "opted out" of the inclusion of First Progress information on his credit report, he has made no allegations regarding the accuracy of the First Progress information. Indeed, it appears that Frazier does not contest the accuracy of the First Progress information on his Equifax consumer report. (*See* Compl. at 7 ("On or about September 20, 2023, Plaintiff received a notice from Equifax Information Solutions informing Plaintiff that they have verified this item and it belongs to the Plaintiff. However Plaintiff did not contend [sic] that this account belonged to him but did inform Equifax that he did not want this First Progress account being shared.").)

As noted above, to proceed under either § 1681e(b) or § 1681i(a), a plaintiff must show that the reported information was in fact inaccurate. *Bibbs*, 43 F.4th at 342-43; *Angino*, 784 F. App'x at 69. For the same reason that Frazier's claims against First Progress fail, his claims against Equifax also fail. Frazier simply has not identified inaccurate credit history information, nor alleged any facts about how the information was inaccurate. *See Covington v. Equifax Info.*

*Servs., Inc.*, No. 21-815640, 2020 WL 1921954, at *6 (D.N.J. Apr. 20, 2020) (finding that the

complaint failed to state factually how, why or in what manner any information plaintiff disputed

was inaccurate); *Regina the First for Guyton v. Equifax Info. Servs., LLC*, No. 18-2534, 2018

WL 3122328, at *2 (E.D. Pa. June 26, 2018) (dismissing complaint for failure to set forth facts

regarding what inaccurate information was included in credit report).

### C.      State Law Claims

To the extent that Frazier seeks to present a state law claim against First Progress for

invasion of privacy, his claim is preempted by federal law.  "[T]he FCRA broadly preempts any

state law "requirement[s] or prohibition[s] . . . with respect to any subject matter regulated under

Section 1681s-2 of this title, relating to the responsibilities of any persons who furnish

information to consumer reporting agencies." *Rivas v. L&N Builders Grp., Inc.*, No. 22-7544,

2023 WL 4014290, at *3 (D.N.J. June 15, 2023) (citing 15 U.S.C. § 1681t(b)(1)(F)); *see also*

*Cheadle v. Experian*, No. 20-18183, 2021 WL 3144843, at *4 (D.N.J. July 26, 2021) ("Although

not yet directly addressed by the Third Circuit, several other circuit courts have held that §

1681t(b)(1)(F) preempts all state and common law claims against furnishers of information with

respect to all subject matter regulated under § 1681s-2.") (citing cases).  Courts, including those

in this district, "have interpreted . . . [§ 1681t(b)(1)(F)] to bar all state claims, whether statutory

or common-law based." *Rivas*, 2023 WL 4014290 at *3 (citations omitted).  *See, e.g., Havassy*

*v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 547 (E.D. Pa. 2020) ("Multiple

district courts within the Third Circuit have likewise adopted this conclusion and found that

Section 1681t(b)(1)(F) preempts both state statutory and common law claims against furnishers

of information acting under Section 1681s-2.") (citing cases); *see also LeBoon v. DS Waters of*

*Am., Inc.*, No. 20-5268, 2021 WL 1193239, at *3 (E.D. Pa. Mar. 30, 2021) (finding that breach

of contract and intentional infliction of emotional distress claims were premised on allegations of conduct regulated under § 1681s-2 and therefore preempted by § 1681t(b)(1)(F)); *Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at \*4 (E.D. Pa. May 9, 2016) (finding state law defamation claim preempted); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 543 (E.D. Pa. 2015) (finding state law defamation claim preempted); *Grossman v. Trans Union*, LLC, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014) (finding state law defamation and negligence claims preempted).  Accordingly, any state law privacy claims against First Progress, which are based on its responsibilities as a furnisher of information under § 1681s-2, will be dismissed.  *See Rivas*, 2023 WL 4014290, at \*3 (finding that plaintiffs' negligence claim is related to or arises out of duties owed under the FCRA and is preempted); *Washington*, 2021 WL 1100637, at \*3 (finding that plaintiff's proposed Amended Complaint failed to state cognizable claims for defamation and intentional infliction of emotional distress against furnisher of information as they are preempted by § 1681t(b)(1)(F)).

Moreover, any privacy claims against Equifax fail pursuant to § 1681h(e) of the FCRA.[5] Section 1681h(e) provides that defamation, invasion of privacy, or negligence claims, while ordinarily preempted by the FCRA, can be brought against a consumer reporting agency if "false information [is] furnished with malice or willful intent." *Williams v. Navient Sols., LLC*, No. 17-

---

[5] Section 1681h(e) states in relevant part:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C § 1681h(e).

6509, 2017 WL 3784039, at *2 (D.N.J. Aug. 31, 2017); *see also Grossman v. Trans Union, LLC*,

992 F. Supp. 2d 495, 499-500 (E.D. Pa. 2014) (noting that § 1681h(e) applies to consumer

reporting agencies and users of consumer reports, but not furnishers of information).  Nothing in

the Complaint supports a reasonable inference that the information supplied to Equifax was false,

or that Equifax acted with malice or intent to injure in reporting it.  *See Parker v. Lehigh Cnty.*

*Domestic Rel. Ct.*, 621 F. App'x 125, 130 (3d Cir. 2015) (*per curiam*) (affirming dismissal of

defamation claim on § 1681h(e) preemption grounds); *Yurkovic v. New Jersey Higher Educ.*

*Student Assistance Auth.*, No. 16-5339, 2019 WL 7602361, at *6 (D.N.J. July 15, 2019) ("Apart

from Plaintiff's conclusory allegations set forth in his complaint, . . . no evidence has been

provided to the Court indicating that any Defendant acted with malice or willful intent.

Plaintiff's common law defamation claim is therefore preempted by the FCRA and is dismissed

[pursuant to 1681h(e)].").

Frazier also purports to present a conspiracy claim by alleging that First Progress and

Equifax "have worked together to unlawfully infringe and invade upon" his right to privacy.

(*See* Compl. at 9-11.)  Putting aside the bald nature of these allegations and whether nonpublic

information was even shared, Frazier has not pled a plausible claim.  Under Pennsylvania law,

"[a] civil conspiracy is a combination or agreement between two or more persons to commit an

unlawful act or a lawful act by unlawful means."  *Ching-Luo v. Owen J. Roberts Sch. Dist.*, No.

19-3997, 2022 WL 4480559, at *2-3 (3d Cir. Sept. 27, 2022) (*per curiam*) (citation and internal

quotation omitted); *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 88 (Pa. 2023).  "[P]roof of

malice - or the intent to injure - is an essential part of the conspiracy cause of action."  *Brignola*

*v. Home Properties, L.P.*, No. 10-3884, 2013 WL 1795336, at *14 (E.D. Pa. Apr. 26, 2013)

(citing *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006)).  Civil conspiracy is not a

separate cause of action but instead requires an underlying tort.  *See Boyanowski v. Cap. Area*

*Intermediate Unit*, 215 F.3d 396, 405-07 (3d Cir. 2000).  Therefore, "[a] verdict on the civil

conspiracy should yield to a finding for the defendant on the underlying tort because the cause of

action is wholly subordinate to the underlying tort's existence."  *Id.* at 407.  Since the Court is

dismissing Frazier's FCRA and privacy claims, there is no underlying tort on which to base a

civil conspiracy claim.  *See Leboon v. Equifax Info. Servs., LLC*, No. 18-1978, 2018 WL

4924170, at *3 (E.D. Pa. Oct. 10, 2018) (dismissing conspiracy claim because court dismissed

FCRA claim and common law negligence claim, and therefore, there was no underlying tort on

which to base his civil conspiracy claim).

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Frazier's Complaint with prejudice

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Frazier will not be given

leave to file an amended complaint, as amendment would be futile.  An appropriate Order

follows.

BY THE COURT:


 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

14